SEALED

FILED IN OPEN COURT
ON 9-23-2020 BG
Peter A. Moore, Jr., Clerk
US District Court
Eastern District of NC

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:20-CR-436-1BO(4)

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL INDICTMENT |
| ) | |
| TRISTAN BISHOP PAN ) | |

The Grand Jury charges that:

## Introduction

1. The defendant, **TRISTAN BISHOP PAN**, was a resident of Wake County, North Carolina, within the Eastern District of North Carolina.

2. Pan Insurance Agency LLC ("Pan Insurance Agency"), formed in or around June 2010, was a Delaware limited liability company that maintained its principal office in Wake County, North Carolina. According to documents filed with the North Carolina Secretary of State, **PAN** was the Chief Executive Officer of Pan Insurance Agency.

3. Pan Realty LLC ("Pan Realty"), formed in or around November 2010, was a North Carolina limited liability company that maintained its principal office in Wake County, North Carolina, at the same location as Pan Insurance Agency. According to documents filed with the North Carolina Secretary of State, **PAN** was the Manager of Pan Realty.

4. Technology for Teaching, formed in or around December 2010, was a North Carolina non-profit corporation that maintained its principal office in Wake County, North Carolina. According to documents filed with the North Carolina Secretary of State, **PAN** was the Registered Agent of Technology for Teaching.

5. NC Health Care Reform Advisors LLC ("NC Health Care Reform Advisors"), formed in or around October 2013, was a North Carolina limited liability company that maintained its principal office in Wake County, North Carolina. According to documents filed with the North Carolina Secretary of State, **PAN** was the Manager of NC Health Care Reform Advisors.

6. A&D Pan Legacy LLC ("A&D Pan Legacy"), formed in or around January 2017, was a North Carolina limited liability company that maintained its principal office in Wake County, North Carolina, at the same location as Pan Insurance Agency. According to documents filed with the North Carolina Secretary of State, **PAN** was the Chief Executive Officer of A&D Pan Legacy.

7. Health Care Without Borders LLC ("Health Care Without Borders"), formed in or around November 2017, was a North Carolina limited liability company that maintained its principal office in Wake County, North Carolina. According to documents filed with the North Carolina Secretary of State, **PAN** was a Member of Health Care Without Borders.

8. Digital Encryption Storage LLC ("Digital Encryption Storage"), formed in or around February 2019, was a Delaware limited liability company that

2

maintained its principal office in Wake County, North Carolina, at the same location as Pan Insurance Agency.

9. Pan Legacy LLC ("Pan Legacy"), formed in or around March 2019, was a North Carolina limited liability company that maintained its principal office in Wake County, North Carolina, at the same location as Pan Insurance Agency. According to documents filed with the North Carolina Secretary of State, **PAN** was the President of Pan Legacy.

10. Khaleesi LLC ("Khaleesi"), formed in or around March 2019, was a North Carolina limited liability company that maintained its principal office in Wake County, North Carolina, at the same location as Pan Insurance Agency. According to documents filed with the North Carolina Secretary of State, **PAN** was the President of Khaleesi.

11. The Night's Watch LLC ("Night's Watch"), formed in or around April 2019, was a North Carolina limited liability company that maintained its principal office in Wake County, North Carolina, at the same location as Pan Insurance Agency. According to documents filed with the North Carolina Secretary of State, **PAN** was the President of Night's Watch.

12. White Walker LLC ("White Walker"), formed in or around April 2019, was a North Carolina limited liability company that maintained its principal office in Wake County, North Carolina, at the same location as Pan Insurance Agency. According to documents filed with the North Carolina Secretary of State, **PAN** was the President of White Walker.

3

## Small Business Administration

13. The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

14. As part of this effort, the SBA facilitated loans through banks, credit unions, and other lenders. These loans had government-backed guarantees.

## The Paycheck Protection Program

15. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

16. In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application, signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan

4

application, the small business (through its authorized representative) was required to state its average monthly payroll expenses and its number of employees, among other things. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses.

17. A PPP loan application was processed by a participating financial institution ("lender"). If a PPP loan application was approved, the participating lender would fund the loan using its own monies, which were guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

18. PPP loan proceeds were required to be used by the business on certain permissible expenses, including payroll costs, mortgage interest, rent, and utilities. Under the applicable PPP rules and guidance, the interest and principal on the PPP loan was eligible for forgiveness if the business was eligible for the PPP loan it received, spent the loan proceeds on these permissible expense items within a designated period of time, and used a certain portion of the loan proceeds for payroll expenses.

## Relevant Financial Institutions and Related Entities

19. Bank 1 was a financial institution within the meaning of Title 18, United States Code, Section 20, the deposits of which were insured by the Federal Deposit Insurance Corporation ("FDIC"). Bank 1 was headquartered in Pennsylvania

5

and maintained branch locations throughout the northeastern United States, all of which were outside the state of North Carolina. Bank 1 participated in the SBA's PPP as a lender and, as such, was authorized to lend funds to eligible borrowers under the terms of the PPP.

20. Bank 2 was a financial institution within the meaning of Title 18, United States Code, Section 20, the deposits of which were insured by the FDIC. Bank 2 was headquartered in Maine and maintained branch locations throughout the northeastern United States, all of which were outside the state of North Carolina. Bank 2 participated in the SBA's PPP as a lender and, as such, was authorized to lend funds to eligible borrowers under the terms of the PPP.

21. Company 1 was a financial technology company based in Fulton County, Georgia, and Company 2 was a financial technology company based in Utah County, Utah. Company 1 and Company 2 participated in the SBA's PPP by, among other things, acting as a service provider between small businesses and certain lenders, including Bank 1 and Bank 2. Small businesses seeking PPP loans could apply through Company 1 and Company 2 for PPP loans. Company 1 and Company 2 would review the loan applications. If a loan application received by Company 1 and Company 2 was approved for funding, a partner lender, such as Bank 1 and Bank 2, disbursed the loan funds to the applicant.

22. Bank 3 was a financial institution within the meaning of Title 18, United States Code, Section 20, the deposits of which were insured by the FDIC. Bank 3 was headquartered in Pennsylvania and maintained branch locations

throughout the United States, including in the State of North Carolina. PAN held accounts at Bank 3, including account nos. x7224, x3536, and x7913.

## The Scheme to Defraud

23. **TRISTAN BISHOP PAN** devised a scheme and artifice to defraud the United States, through the SBA, and various financial institutions, including Bank 1 and Bank 2, by: (1) falsifying PPP loan applications, forms, and other documents ("fraudulent loan applications"); (2) submitting and causing to be submitted fraudulent loan applications to Company 1, Company 2, and others in order to obtain funds through the PPP; and (3) receiving and obtaining payments and benefits from Bank 1, Bank 2, and others based on the fraudulent loan applications submitted.

## Purpose of the Scheme

24. The purpose of the scheme and artifice was for the defendant to unjustly enrich himself and others through the submission of the fraudulent loan applications.

## Manner and Means of the Scheme

25. The manner and means by which **PAN** sought to accomplish the objects and purpose of the scheme and artifice included, among others:

### *Pan Insurance Agency PPP Application*

26. On or about May 11, 2020, **PAN** electronically submitted and caused to be submitted a false and fraudulent PPP application in the name of Pan Insurance Agency, from Wake County, North Carolina to Company 1, located in Fulton County, Georgia, seeking approximately $680,627 in PPP funds ("Pan Insurance Agency PPP application"). **PAN** signed the Pan Insurance Agency PPP application and certified

that the application and all information provided therein, as well as the supporting documents and forms, were true and accurate. Among other things, **PAN** certified that the funds would be used "to retain workers and maintain payroll," as well as for making other permissible expenses.

27. In the Pan Insurance Agency PPP application, **PAN** falsely represented that the company had 37 employees and that its average monthly payroll was approximately $272,251. In addition, **PAN** submitted a document that purported to be the company's Employer's Quarterly Tax and Wage Report ("Tax and Wage Report") for the first quarter of 2020 filed with the North Carolina Department of Commerce. On the purported Tax and Wage Report, **PAN** falsely represented that, in the first quarter of 2020, Pan Insurance Agency had made payments to 24 separate employees.

28. Moreover, **PAN** submitted a document that purported to be the company's Transmittal of Wage and Tax Statements ("IRS Form W-3") for 2019. On the purported IRS Form W-3, **PAN** falsely represented that, in 2019, **PAN** had paid Pan Insurance Agency's employees approximately $912,815.67 in wages, tips, and other compensation, and that he had withheld more than $133,000 in federal income, Social Security, and Medicare taxes.

29. As **PAN** knew at the time that he submitted the Pan Insurance Agency PPP application, Pan Insurance Agency neither employed the number of individuals identified nor did it incur the monthly payroll expenses reported in the application. Moreover, Pan Insurance Agency had not paid the wages or withheld the taxes

8

identified in the purported Tax and Wage Report and IRS Form W-3. The purported Tax and Wage Report and IRS Form W-3 that **PAN** provided in support of the company's PPP application were fraudulent.

30. Based on **PAN's** material misrepresentations set forth in the fraudulent Pan Insurance Agency PPP application and supporting documents described in Paragraphs 26 through 29, on or about May 11, 2020, Company 1 approved the Pan Insurance Agency PPP application, and, on or about May 13, 2020, Bank 1 disbursed approximately $680,627 in loan benefits to account no. x7224, held by **PAN** at Bank 3.

### *White Walker PPP Application*

31. On or about June 12, 2020, **PAN** electronically submitted and caused to be submitted a false and fraudulent PPP application in the name of White Walker, from Wake County, North Carolina to Company 2, located in Utah County, Utah, seeking approximately $33,600 in PPP funds ("White Walker PPP application"). **PAN** signed the White Walker PPP application and certified that the application and all information provided therein, as well as the supporting documents and forms, were true and accurate. Among other things, **PAN** certified that the funds would be used "to retain workers and maintain payroll," as well as for making other permissible expenses.

32. In the White Walker PPP application, **PAN** falsely represented that the company had 9 employees and that White Walker's average monthly payroll was approximately $13,475. In addition, **PAN** submitted a document that purported to

9

be the company's Employer's Annual Federal Unemployment Tax Return ("IRS Form 940") for 2019. On the purported IRS Form 940, **PAN** falsely represented that, in 2019, White Walker had made approximately $161,707.06 in payments to employees.

33. As **PAN** knew at the time that he submitted the White Walker PPP application, White Walker neither employed the number of individuals identified nor did it incur the monthly payroll expenses reported in the application. Moreover, White Walker had not filed any IRS Form 940. The purported IRS Form 940 submitted with the White Walker PPP application listed the company's Employer Identification Number ("EIN") and showed a signature date of January 31, 2020, yet **PAN** did not establish an EIN for White Walker until on or about April 2, 2020. The purported IRS Form 940 that **PAN** provided in support of the White Walker PPP application was fraudulent.

34. Based on **PAN's** material misrepresentations set forth in the fraudulent White Walker PPP application and the supporting documents described in Paragraphs 31 through 33, on or about June 22, 2020, Company 2 approved the White Walker PPP application, and, on or about June 26, 2020, Bank 2 disbursed approximately $33,600 in loan benefits to account no. x3536, held by **PAN** at Bank 3.

## Scope of Scheme

35. In addition to the Pan Insurance Agency PPP application and the White Walker PPP application, from in or around May 2020, and continuing through at least in or around July 2020, **PAN** submitted and caused the submission of fraudulent PPP applications through Company 1, Bank 1, and other financial technology companies

10

and financial institutions. The companies for which **PAN** submitted these loan applications and the approximate amounts of loan benefits sought are summarized in the below table:

| No. | Company Name | EIN | Purported Average Monthly Payroll | Amount Sought |
|---|---|---|---|---|
| 1 | Pan Insurance Agency | 47-3783904 | $412,480 | $1,031,200 |
| 2 | A&D Pan Legacy | 82-1214336 | $162,916 | $407,288 |
| 3 | Pan Legacy | 85-0594171 | $31,026 | $77,563 |
| 4 | Digital Encryption Storage | 83-3706865 | $181,604 | $454,010 |
| 5 | Health Care Without Borders | 82-3565085 | $238,744 | $596,858 |
| 6 | Technology for Teaching | 27-4120425 | $24,090 | $60,223 |
| 7 | Khaleesi | 85-0594146 | $8,198 | $20,400 |
| 8 | NC Health Care Reform Advisors | 47-1556143 | $271,104 | $595,000 |
| 9 | Health Care Without Borders | 82-3565085 | $238,294 | $595,300 |
| 10 | Pan Realty | 27-4100530 | $271,027.94 | $677,569.85 |
| 11 | Night's Watch | 85-1087536 | $42,335 | $105,800 |
| 12 | A&D Pan Legacy | 82-1214336 | $342,165 | $855,400 |

36. For the PPP application numbered one (1) above (Pan Insurance Agency), among other things, **PAN** falsely certified that Pan Insurance Agency had not received and would not receive another PPP loan.

37. For each of the PPP applications numbered two (2) through six (6) above (A&D Pan Legacy, Pan Legacy, Digital Encryption Storage, Health Care Without Borders, and Technology for Teaching), among other things, **PAN** submitted a false IRS Form W-3 for 2019 associated with each company, each of which was purportedly signed on or about January 30, 2020.

11

38. For each of the PPP applications numbered seven (7) through twelve (12) above (Khaleesi, NC Health Care Reform Advisors, Health Care Without Borders, Pan Realty, Night's Watch, and A&D Pan Legacy), **PAN** submitted false documents that purported to be each company's IRS Form 940 for 2019. On each purported IRS Form 940, **PAN** falsely represented the amount of payments made to employees by **PAN** in 2019.

39. For each of the PPP applications numbered three (3), seven (7), and eleven (11) above (Pan Legacy, Khaleesi, and Night's Watch), the EIN for these companies was not established until in or around April or May 2020. **PAN** submitted false tax documents purportedly signed in or around January 2020 that listed these EINs, despite the EINs not being in existence at the time.

40. In total, based on the approximately fourteen (14) PPP applications **PAN** submitted and caused to be submitted, including the Pan Insurance Agency PPP application and the White Walker PPP application, **PAN** fraudulently sought at least $6,190,839 in PPP loans and obtained at least $1,745,427 in loan benefits.

## COUNTS ONE AND TWO

41. Paragraphs 1 through 22 of this Indictment are incorporated herein by reference as factual allegations.

42. Beginning in or around May 2020, and continuing through in or around at least July 2020, in Wake County, in the Eastern District of North Carolina, and elsewhere, the defendant, **TRISTAN BISHOP PAN**, having knowingly devised and intended to devise a scheme and artifice to defraud, and to obtain money and property

12

by means of materially false and fraudulent pretenses, representations, and promises, and attempting to do so, did knowingly transmit and cause to be transmitted, by means of wire communications in interstate commerce, writings, signals, pictures, and sounds for the purpose of executing such scheme and artifice.

43. The scheme to defraud is more fully described in paragraphs 23 through 40 of this Indictment and is re-alleged and incorporated by reference as if fully set forth herein.

44. On or about the dates specified below, in the Eastern District of North Carolina, and elsewhere, **PAN** submitted and caused to be submitted the following wire communications in an attempt to execute, and in execution of the scheme, as described in paragraphs 23 through 40 of this Indictment, with each transmission by wire communication forming a separate count:

| Count | Approximate Date | Description of Wire |
|---|---|---|
| 1 | May 11, 2020 | **PAN** electronically submitted the Pan Insurance Agency PPP application and supporting documents, from the Eastern District of North Carolina, to Company 1, located outside the State of North Carolina |
| 2 | June 12, 2020 | **PAN** electronically submitted the White Walker PPP application and supporting documents, from the Eastern District of North Carolina, to Company 2, located outside the State of North Carolina |

Each of the above is a violation of Title 18, United States Code, Section 1343.

## COUNTS THREE AND FOUR

45. Paragraphs 1 through 22 of this Indictment are incorporated herein by reference as factual allegations.

13

46. Beginning in or around May 2020, and continuing through in or around at least July 2020, in Wake County, in the Eastern District of North Carolina, and elsewhere, the defendant, **TRISTAN BISHOP PAN**, knowingly executed and attempted to execute a scheme and artifice to defraud a financial institution and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody or control of, a financial institution, by means of materially false and fraudulent pretenses, representations, and promises.

47. The scheme to defraud is more fully described in paragraphs 23 through 40 of this Indictment and is re-alleged and incorporated by reference as if fully set forth herein.

48. On or about the dates specified below, in the Eastern District of North Carolina, and elsewhere, **PAN** attempted to execute and executed the scheme, as described in paragraphs 23 through 40 of this Indictment, with each execution set forth below forming a separate count:

| Count | Approximate Date | Description |
| --- | --- | --- |
| 3 | May 13, 2020 | Predicated on the fraudulent Pan Insurance Agency PPP application and supporting documents **PAN** submitted to, and which were approved by, Company 1, Bank 1 disbursed $680,627 in loan benefits to account no. x7224, held by **PAN** at Bank 3. |
| 4 | June 26, 2020 | Predicated on the fraudulent White Walker PPP application and supporting documents **PAN** submitted to, and which were approved by, Company 2, Bank 2 disbursed $33,600 in loan benefits to account no. x3536, held by **PAN** at Bank 3. |

Each of the above is a violation of Title 18, United States Code, Section 1344.

14

## COUNTS FIVE AND SIX

49. Paragraphs 1 through 40 of this Indictment are incorporated herein by reference as factual allegations.

50. On or about the dates specified as to each count below, in the Eastern District of North Carolina, and elsewhere, the defendant, **TRISTAN BISHOP PAN**, knowingly engaged and attempted to engage in monetary transactions by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is wire fraud, in violation of Title 18, United States Code, Section 1343, and bank fraud, in violation of Title 18, United States Code, Section 1344, as set forth below:

| Count | Date | Description |
| --- | --- | --- |
| 5 | May 18, 2020 | **PAN** transferred and caused an electronic transfer of $250,000 from account no. x7224 to account no. x7913, both held by **PAN** at Bank 3 |
| 6 | June 22, 2020 | **PAN** transferred and caused an electronic transfer of $410,000 from account no. x7224 to account no. x7913, both held by **PAN** at Bank 3 |

Each of the above is a violation of Title 18, United States Code, Section 1957.

(REMAINDER OF PAGE INTENTIONALLY LEFT BLANK)

## FORFEITURE NOTICE

The defendant is hereby given notice that all property specified herein is subject to forfeiture.

Upon conviction of one or more of the offenses set forth in Counts One through Four of this Indictment, the defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(A), and/or Title 18, United States Code, Section 981(a)(1)(C), the latter made applicable by Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to any of the said offenses.

Upon conviction of one or more of the offenses set forth in Counts Five or Six of this Indictment, the defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), and/or Title 18, United States Code, Section 981(a)(1)(A), the latter made applicable by Title 28, United States Code, Section 2461(c), any property, real or personal, involved in such offense(s), or any property traceable to such property.

The forfeitable property includes, but is not limited to, the gross proceeds of the defendant's offenses up to at least $1,745,427.00.

If any of the above-described forfeitable property, as a result of any act or omission of the defendant,

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third person;

(3) has been placed beyond the jurisdiction of the court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

A TRUE BILL

Foreperson

Date: 9-23-20

**REDACTED VERSION**
Pursuant to the E-Government Act and the federal rules, the unredacted version of this document has been filed under seal.

ROBERT J. HIGDON, JR.
United States Attorney

BY: Ethan A. Ontjes
Assistant United States Attorney

DANIEL KAHN
Acting Chief, Fraud Section
United States Department of Justice

BY: Justin M. Woodard
Trial Attorney
Criminal Division, Fraud Section
United States Department of Justice